**Sharon CAMPBELL,**
**Plaintiff–Appellant,**

v.

**INGERSOLL MILLING MACHINE COMPANY, an Illinois corporation, and Henry Ortland, individually, Defendants–Appellees.**

No. 88–2796.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 30, 1989.

Decided Jan. 23, 1990.

Edward F. Diedrich (argued), DeKalb, Ill., for Sharon Campbell, plaintiff-appellant.

Karl W. Grabemann, McDermott, Will & Emery, Chicago, Ill., Leonard C. Remencius, Mary J. Gaziano, Remencius & Associates, Edward J. Fahy, James D. Zeglis (argued), Reno, Zahm, Folgate, Lindberg & Powell, Rockford, Ill., for Ingersoll Milling Mach. Co. and Henry Ortland, defendants-appellees.

Before CUDAHY, EASTERBROOK, and MANION, Circuit Judges.

MANION, Circuit Judge.

Sharon Campbell, a black woman, began working for the Ingersoll Milling Machine Company (Ingersoll) in 1980 as a security guard. In 1985, Campbell left her employment at Ingersoll. Campbell claimed she was fired; Ingersoll claimed that Campbell left voluntarily.

On May 4, 1985, Campbell filed a charge with the EEOC, alleging that Ingersoll fired her because of her race and sex. Specifically, Campbell alleged she had been working on Ingersoll's third shift, and had been a supervisor on that shift since March, 1984. At about that same time, she began dating David Pickett, a white security officer who worked on a different shift. Ingersoll subsequently transferred Pickett to the third shift. Although there were no problems with either her own or Pickett's work (according to Campbell), rumors began to circulate about the pair. In January, 1985, Henry Ortland, Ingersoll's personnel manager, told Campbell and Pickett that one of them would have to leave. The next day, Campbell charged, Carl Towns, another supervisor at Ingersoll, told Campbell that he had secured an employment interview for her at Northern Illinois Gas. Campbell attended the interview and was given the job but she wanted to remain at Ingersoll. Towns, however, told her that if she did not take the job at Illinois Gas, Ingersoll would fire her. Campbell alleged that in ending her employment Ingersoll treated her differently than Pickett and white male employees in general.

After receiving her right to sue letter from the EEOC, Campbell sued Ingersoll, Ortland, and Towns in March 1986. (We shall refer to the defendants collectively as "Ingersoll.")[1] Campbell's complaint alleged that Ingersoll violated Title VII by firing her because of her race and sex, alleging essentially the same facts (though slightly embellished) as her EEOC charge. In July 1986, Campbell filed an amended complaint, adding claims for compensatory and punitive damages for race discrimination under 42 U.S.C. § 1981 and conspiracy under 42 U.S.C. § 1985(3). Those claims, like the Title VII claim, were based strictly on Campbell's alleged discriminatory discharge. In March 1987, Campbell filed a second amended complaint. The second amended complaint merely clarified one factual allegation made in the first two complaints. It added no new claims, and again was based strictly on Campbell's firing.

The district court scheduled Campbell's trial to begin on May 31, 1988. On May 9, three weeks before trial, Campbell moved

1. Campbell voluntarily dismissed Towns before trial, and he is not a party to this appeal.

to amend her complaint to add a state-law claim for intentional infliction of emotional distress. This claim, however, was not related to Campbell's firing, and was not based on the facts stated in her earlier complaints. Instead, Campbell's proposed amendment was based on an alleged sexual assault by her supervisor in either late 1982 or early 1983.[2] (The amendment did not name the supervisor as a defendant.) Ingersoll opposed the motion to amend and filed a motion in limine to exclude evidence of the alleged assault. The district court denied the motion to amend and the case went to trial on the claims stated in Campbell's earlier complaints. After hearing much of the evidence on Campbell's claims, the court granted Ingersoll's motion in limine.

After all the evidence was in, the court submitted the case to the jury. (On the Title VII claim, the jury's finding was to be advisory only.) The court also submitted two special interrogatories to the jury. Those interrogatories asked:

1. Was race a determining factor in the defendants' decision to discharge the plaintiff?

2. Was sex a determining factor in the defendants' decision to discharge the plaintiff?

The jury answered "no" to both special interrogatories. For some reason, though, the jury returned a verdict for Campbell and awarded her $10,000 in compensatory damages.

After the district court entered judgment on the jury's verdict, Ingersoll filed a motion for judgment notwithstanding the verdict. The district court, based on the jury's answers to the special interrogatories, granted Ingersoll's motion. The court also entered judgment for Ingersoll on Campbell's Title VII claim.

■ On appeal, Campbell raises several issues. Campbell argues first that the district court erred by denying her leave to amend her complaint to include her state-law claim for intentional infliction of emotional distress. Whether to grant or deny

leave to amend is within the district court's discretion. *First Wisconsin Financial Corp. v. Yamaguchi*, 812 F.2d 370, 373 (7th Cir.1987). Although Fed.R.Civ.P. 15(a) states that leave to amend "shall be freely given when justice so requires," we have upheld decisions to deny leave to amend, particularly where, as here, plaintiffs sought to add new claims a short time before trial. See, e.g., *Feldman v. Allegheny Int'l, Inc.*, 850 F.2d 1217, 1225–26 (7th Cir.1988); *Tamari v. Bache & Co. (Lebanon)*, 838 F.2d 904, 908–09 (7th Cir. 1988); *Bohen v. City of East Chicago*, 799 F.2d 1180, 1184–85 (7th Cir.1986). As we noted in *Bohen*, a "trial judge is particularly well-situated to judge the worthiness of a plaintiff's motion to amend his complaint, having been involved in the progress of the case throughout its development and having viewed first-hand the party's diligence or lack thereof." 799 F.2d at 1185.

■ The district court did not abuse its discretion by refusing to allow Campbell to amend her complaint. Campbell moved three weeks before trial to add a claim based on an incident that none of her earlier complaints (both in court and before the EEOC) even hinted at, that involved none of the individual defendants named in her suit, and that occurred more than five years earlier. It may be true, as Campbell argues, that Ingersoll knew that the alleged sexual assault had occurred (or that Campbell had reported it had occurred); but there is nothing in the record that reasonably would have given Ingersoll any indication that it would have to defend against it. Eleventh hour additions of new legal and factual theories inevitably require new rounds of discovery and additional legal research. This is bound to produce delays that burden not only the parties to the litigation but also the judicial system and other litigants. A district court judge is entitled, in such circumstances, to refuse to allow a plaintiff's amendment. Cf. *Feldman*, 850 F.2d at 1225–26; *Tamari*, 838 F.2d at 909.

---

**2.** Campbell's motion to amend states that the assault occurred in January 1983; her offer of proof at trial placed the assault in September 1982.

Campbell argues that the sexual assault caused her to suffer from post-traumatic stress disorder, a condition that would have made her reluctant to discuss the incident causing the trauma. This stress was so great, according to Campbell, that she could not even tell her attorney about the assault. Campbell argues that her attorney first found out about the alleged assault at a deposition of one of her doctors, and moved to amend the complaint only a few months afterwards. Thus, she argues that the district court should not have held the late date of her amendment against her. Campbell does not cite anything in the record to substantiate her claim that her psychological condition prevented her from raising the alleged assault sooner or to show that she raised this concern with the district court. Even if she did point this out to the district court, the court was not bound to grant her motion. Sympathetic as Campbell's position may appear, the district court was entitled to weigh the effects of her late amendment on Ingersoll and the court itself, and it was within the court's discretion to conclude that these concerns outweighed Campbell's reason for not raising her emotional distress claim earlier.[3]

■ Campbell next argues that the district court erred by excluding evidence of the alleged sexual assault. The district court, after hearing much of Campbell's other evidence, excluded evidence of the assault for two reasons. First, the court found the evidence of the assault to be irrelevant to the issue of whether Ingersoll discharged Campbell because of her sex. Second, the court found that even if the

evidence was somehow relevant, the danger of unfair prejudice to Ingersoll outweighed the evidence's probative value. See Fed.R.Evid. 403. The district court's decision to exclude evidence of the assault was within the court's discretion, and we may reverse only if the court abused that discretion. See *Mayoza v. Heinold Commodities, Inc.*, 871 F.2d 672, 677 (7th Cir. 1989).

Evidence is relevant if it tends "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R. Evid. 401. Campbell asserts that since the alleged assault was an instance of sexual harassment, evidence of the assault was relevant to show Ingersoll's sexual animus. According to Campbell, sexual harassment is sex discrimination (citing *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)), and instances of past discrimination are relevant to show that sexual animus motivated an employer's subsequent conduct (citing *United Airlines, Inc. v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977)). Campbell also asserts that the evidence was relevant to determining her damages. Campbell's psychiatrist testified that she suffered from post-traumatic stress disorder, and that her discharge exacerbated her condition. According to Campbell, the expert was prepared to testify that the assault caused her condition. Therefore, says Campbell, the district court should have allowed her to introduce evidence of the assault.

3. Campbell and Ingersoll argue about whether the district court erred by not allowing Campbell to amend her complaint to include a Title VII claim for sexual harassment based on the alleged assault. That argument is beside the point. Campbell moved in the district court only to add a state-law claim for intentional infliction of mental distress, so she has waived any Title VII claim for sexual harassment on appeal. In any event, a motion to amend to include a Title VII sexual harassment claim would have been futile. Campbell's EEOC charge did not raise any claim for sexual harassment, and did not even mention the alleged sexual assault (or any other incident of harass-

ment, for that matter). Campbell's EEOC charge raised only her discharge, and the events that immediately concerned her discharge, events that occurred long after the alleged sexual assault, and that had no relation to that alleged assault. Moreover, Campbell does not argue that the EEOC's investigation of her charge covered the alleged assault. Since the assault was not "like or reasonably related to" the allegations in Campbell's charge, and since the EEOC's investigation did not cover the assault, Campbell could not bring a Title VII claim based on the assault. *Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 126–28 (7th Cir.1989).

It is true that both this court and the Supreme Court have held that sexual harassment of female employees can constitute sex discrimination. "Creating abusive conditions for female employees and not for male employees is discrimination." *Bohen*, 799 F.2d at 1185 (citing *Vinson*). It is also true that we have held that evidence of past discrimination can be relevant to show subsequent discrimination. See *Williamson v. Handy Button Machine Co.*, 817 F.2d 1290, 1295 (7th Cir. 1987); *Mathewson v. National Automatic Tool Co., Inc.*, 807 F.2d 87, 91 (7th Cir. 1986). But even assuming that the sexual assault did constitute sex discrimination, it still does not necessarily follow that the assault was relevant to determining whether Ingersoll discharged Campbell because of her sex. Not all past discriminatory acts support an inference of subsequent discrimination. E.g., *Steffen v. Meridian Life Ins. Co.*, 859 F.2d 534, 547 (7th Cir. 1988).

We tend to agree with the district court that the alleged assault was irrelevant to Ingersoll's reasons for firing Campbell. The assault occurred two to two and one-half years before Campbell's discharge. The supervisor who assaulted Campbell had nothing to do with her discharge; in fact, Ingersoll had laid him off in 1983. Campbell alleges that Ingersoll "acquiesced" in the assault by failing to discipline the supervisor after Campbell reported the incident. But the evidence of acquiescence was weak and disputed. More importantly, Campbell never contended that Towns and Ortman, the two Ingersoll employees who allegedly fired her, knew anything about the alleged assault or had anything else to do with it.

Even if the alleged assault was relevant to Ingersoll's motive for firing Campbell, its relevance was marginal, at best. On the other hand, the district court could properly conclude that the danger of unfair prejudice—that is, the danger that the evidence would lead the jury to decide the case on an improper basis such as sympathy, see *Cook v. Hoppin*, 783 F.2d 684, 689 (7th Cir.1986)—to Ingersoll was great. It is reasonable to think that the jury might have felt sorry for Campbell because of the assault and might have compensated her for that assault, even though no assault claim was before it and even though it did not believe that Ingersoll fired her because of her sex or race. The court could reasonably conclude that this danger of unfair prejudice outweighed any probative value the evidence of the assault might have had regarding Ingersoll's motive for firing Campbell.

Similarly, even assuming the assault was relevant to Campbell's damages, its relevance was marginal. The only claim before the jury was the claim that Ingersoll fired Campbell because of her race or sex. The only damages Campbell could recover were damages caused by her firing. Although it might have been helpful to the jury to know exactly what caused Campbell's post-traumatic stress disorder, the essential facts the jury needed to know were that the disorder existed and that her firing caused her damages by exacerbating the disorder. Excluding evidence of the sexual assault did not prevent Campbell from showing these facts. Again, the court could reasonably conclude that the danger of unfair prejudice outweighed any probative value the evidence of the assault might have had regarding Campbell's damages. The district court was in the best position to make this decision, since it had the opportunity to see all the evidence in context and since it was better able to gauge the jury's likely reaction to the evidence. Appellate second-guessing in these types of cases is unlikely to help produce more "correct" outcomes. Cf. *United States v. Beasley*, 809 F.2d 1273, 1278–79 (7th Cir. 1987). The district court weighed the proper factors, and did not abuse its discretion by excluding evidence of the assault.

Campbell's final two arguments are meritless. Campbell asserts the district court erred in submitting the special interrogatories to the jury. Her argument, however, is based on her assertion that other claims besides her claim for discriminatory discharge were properly before the jury. As we have seen, the district court properly denied Campbell's motion to amend her

complaint; consequently, the only claim before the jury was her claim that Ingersoll fired her because of her race or sex. The special interrogatories focused the jury's attention on the question that most mattered—Ingersoll's motivation for firing Campbell—and allowed the court to see exactly how the jury decided that question. The court did not abuse its broad discretion under Fed.R.Civ.P. 49(b) by submitting the interrogatories to the jury. See *Elston v. Morgan*, 440 F.2d 47 (7th Cir.1971).

Campbell finally argues that the district court erred by entering judgment notwithstanding the general verdict based on the jury's answers to the interrogatories. Rule 49(b) provides that when special interrogatory answers are consistent, but one or more of the answers is inconsistent with the general verdict, the court has three options it may follow: the court may order the jury to consider its answers further; the court may order a new trial; or, the court may, as in this case, enter a judgment consistent with the answers notwithstanding the general verdict. The district court, which heard the evidence in this case and observed the witnesses, agreed with the jury's answers to the interrogatories and therefore entered judgment for Ingersoll based on those answers. This was within the court's discretion, and we find no abuse. See *Elston*, 440 F.2d at 49.

The district court's decision is

AFFIRMED.