Dorothy CLAY, Plaintiff–Appellant,

v.

CITY OF CHICAGO DEPARTMENT OF HEALTH, Erlinda Tzirides, individually and not in her capacity as an employee of the City of Chicago Department of Health, Jackie Kean, individually and not in her capacity as an employee of the City of Chicago Department of Health, et al., Defendants–Appellees.

No. 97–2114.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 20, 1998.

Decided May 14, 1998.

Calvita J. Frederick (argued), Frederick & Associates, Chicago, IL, for Dorothy Clay.

Lawrence Rosenthal, Mardell Nereim (argued), Benna R. Solomon, Susan S. Sher, Patricia T. Bergeson, Office of the Corporation Counsel, Appeals Division, Chicago, IL, for City of Chicago Department of Health, Erlinda Tzirides, Jackie Kean, Sheila Lyne, and Does, 2 through 5.

Joseph R. Lipton, City of Chicago, Law Department, Chicago, IL, for City of Chicago.

Steven J. Mandel, Marva M. Peace–Jackson, Department of Labor, Appellate Litigation, Washington, DC, William J. Stone, Department of Labor, Office of the Solicitor, Washington, DC, for U.S. Department of Labor.

Before CUMMINGS, KANNE and EVANS, Circuit Judges.

CUMMINGS, Circuit Judge.

Plaintiff Dorothy Clay was employed as Director of Human Resources in Chicago's Department of Health in November 1992. Defendant Jackie Kean, who was then Assistant Commissioner for the Department of Health, interviewed Clay for the position and explained at length the duties that plaintiff would be performing, including the distribution of paychecks, recruitment and hiring of Department employees and management of its personnel. Plaintiff was an at-will em-

ployee. Kean spent much time with Clay explaining her duties and answering any of her questions. Other personnel also explained to Clay the duties of Director of Human Resources.

Clay has a degenerative disk disease causing severe back pain which required her to take several medical leaves. She took her last medical leave from July 7, 1994, through August 8, 1994, receiving hospital treatment and then convalescing at home. On her August 9th return, defendant Erlinda Tzirides, Deputy Commissioner of Administration for the Department of Health, and Kean met with her and told her they wanted Michael Sulewski, who had replaced Clay during her leave, to continue as Acting Director of Human Resources because he had worked so effectively during Clay's absence. They told Clay that they would have her work on special projects until she found employment elsewhere.

On December 19, 1994, after having given Clay five months' notice to find another job, Tzirides advised Clay that her discharge would be effective December 31, 1994. Because of many observed deficiencies in her performance, Tzirides, Kean and Commissioner Lyne had earlier decided to terminate Clay.

In June 1996, Clay filed a five-count complaint against the City of Chicago, its Department of Health, Commissioner Sheila Lyne, Erlinda Tzirides and Jackie Kean. Count I alleged a violation of the Family and Medical Leave Act (29 U.S.C. §§ 2601 *et seq.*). Count II alleged discrimination in employment on the basis of disability in violation of 42 U.S.C. § 12111, and the final three Counts requested relief under 42 U.S.C. § 1983.

After retaining new counsel, Clay filed a first amended complaint in November 1996, realleging her Family Medical Leave Act claim and discrimination based on disability claim under 42 U.S.C. § 1983. In January 1997, plaintiff filed a second amended complaint. Count II for the first time alleged discrimination against Clay as a constitutionally protected black American.

In February 1997, in the first of three opinions, the district court struck Count II of the second amended complaint based on 42 U.S.C. § 1983 because it did not allege that plaintiff was discriminated against pursuant to city custom or policy and because the individual defendants, sued in their official capacities, were not allegedly acting pursuant to a city custom or policy. In a March 1997 opinion, Judge Conlon refused to reconsider her initial opinion and explained that she would not construe Count II as if the individual defendants were sued in their individual capacities because the race discrimination issue came too late. In April 1997, in a third and final opinion, the district court granted defendants' motion for summary judgment because plaintiff had not shown that she was meeting defendants' legitimate expectations and had failed to show that her discharge for unsatisfactory performance was pretextual. We affirm.

The evidence shows that Clay was discharged for poor performance. The hiring forms prepared by her office were defective, and she did not submit request to hire forms with screening criteria under official City job requirements. Consequently vacancies remained unfilled, and Clay was unable to get along with the staff of the City Deputy Budget Director. In June 1994, Commissioner Lyne received a memorandum from the City Budget Director describing a number of shortcomings in the Human Resources unit.

Because of Clay's inattention, hiring for vacant positions in the Department of Health was delayed. She also promised employees various positions for which they were not qualified. Christine Kosmos, Director of Division of Health Protection and Regulations of the Department of Health, advised Clay how to implement cutbacks but a month later Clay still did not have an appropriate plan.

During Clay's tenure, many Department of Health employees filed grievances, but Clay was unable to provide documentation showing compliance. In addition, she rarely returned the telephone calls of Patrick Ward, Personnel Analyst for the Department of Personnel, concerning hiring process issues. She also failed to follow his instructions about advertisements for positions and repeatedly failed to get paychecks out on time. According to Assistant Health Commissioner Jackie Kean, Clay adopted uncompromising

positions in labor management negotiations and had personnel difficulties with her own staff. For example, Johanna Ryan left her position as supervisor of personnel under Clay because of Clay's micromanagement.

While Clay's first rating was "very good," it was reduced to "good" because of her hands-on management style and the lack of autonomy given to her staff. At the time of the second rating, Kean told Clay where she needed to improve her performance. In June 1994, after receiving complaints and negative feedback about Clay from various officials, Deputy Commissioner Tzirides concluded that Clay's job performance was deficient and, in August 1994, informed Clay that Sulewski would remain as Director of Human Resources.

## Discussion

■ The evidence summarized above shows that Clay was discharged at the end of 1994 for poor performance. Indeed when she returned to work in August 1994, she was told she must find work elsewhere in view of her work deficiencies. Plaintiff has not shown that her discharge was for having taken medical leave. Indeed there is voluminous evidence that she was replaced solely because of her work deficiencies known to defendants prior to her leave. Therefore we disagree with plaintiff and the *amicus curiae* Secretary of Labor that the district court's judgment be reversed.

As the evidence summarized above demonstrates, plaintiff was discharged for poor performance rather than for taking a medical leave. Indeed, the defendants never questioned plaintiff's prior leaves or her final leave. There has been no showing that she was discharged because of medical absence. As in *Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 680–681 (7th Cir.1997), defendants did not violate the Family and Medical Leave Act by not reinstating and indeed discharging Clay because they could have discharged her for poor performance even if she had not taken the final leave. As in *Schultz v. General Elec. Capital Corp.*, 37 F.3d 329, 334 (7th Cir.1994), certiorari denied, 515 U.S. 1145, 115 S.Ct. 2584, 132 L.Ed.2d 833, plaintiff has not shown that defendants lied about their belief that plaintiff was a poor performer. Like *Schultz*,

there is nothing to show that Clay was not terminated for poor performance. The fact that at one point she had received a "good" rating does not help her because uncontradicted evidence is replete that her performance was extremely flawed. Proof that plaintiff was once considered an adequate employee before her discharge does not suggest that defendants' explanation for her discharge was in violation of the Family and Medical Leave Act. *Gustovich v. AT & T Communications, Inc.*, 972 F.2d 845, 848 (7th Cir.1992). She simply has been unable to show that she was terminated because of her medical leave or race.

■ After the district court justifiably concluded that Clay was not discriminated against because she took a medical leave or because she had a disability, Clay attempted to amend her complaint to add a race discrimination claim. As the district court noted, plaintiff's EEOC charge, her original complaint and first amended complaint all allege that she had been demoted and later discharged because of disability and taking a medical leave. The court stated that Clay had not explained why she changed her legal theory and delayed in presenting a race discrimination charge. Discovery had been completed and yet plaintiff was attempting to present a new issue that had "never before been alleged, investigated, or researched" (R. 49 at 6). She never explained why the race discrimination complaint was presented so late. In these circumstances, the district court was justified in refusing to allow this amendment. *Campbell v. Ingersoll Milling Mach. Co.*, 893 F.2d 925, 927 (7th Cir.1990), certiorari denied, 498 U.S. 844, 111 S.Ct. 127, 112 L.Ed.2d 95. There was no abuse of discretion in denying Clay leave to add a race discrimination theory.

In closing, this case is governed by our decision in *Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394 (7th Cir.1997). Just as Clay relies on her "good" performance evaluation, Wallace relied on a favorable performance evaluation. As here, Clay's "good" performance evaluation was vitiated by overwhelming testimony that her performance had in fact been inadequate. Consequently, the "good" performance evaluation has "little

significance in a case in which there is so dramatic a discrepancy between evaluation and performance * * * as there was here." 103 F.3d at 1398. In light of the undisputed evidence of Clay's poor performance, no court or "jury would be permitted to find" a statutory violation "on the basis of the employee evaluation[ ]." *Id.* at 1399.

Judgment affirmed.