**INTERMATIC INCORPORATED,
Plaintiff–Cross Appellant,**

v.

**The LAMSON & SESSIONS CO.,
Defendant–Appellant.**

**Intermatic Incorporated,
Plaintiff–Appellant,**

v.

**Lamson & Sessions Co., Defendant–
Appellee.**

**Nos. 00–1101, 00–1116 and 01–1028.**

United States Court of Appeals,
Federal Circuit.

DECIDED: Dec. 17, 2001.

Rehearing En Banc Denied Feb. 6, 2002.

---

Timothy Q. Delaney, Brinks Hofer Gilson & Lione, of Chicago, Illinois argued for plaintiff-cross appellant in 00–1101, –1116 and for plaintiff-appellant in 01–1128. With him on the brief were John K. Lucas, Harold V. Johnson, and Mark H. Remus.

Kenneth R. Adamo, Jones, Day, Reavis & Pogue, of Cleveland, OH, argued for defendant-appellant in 00–1101, –1116, and for defendant-appellee in 01–1028. With him on the brief were Timothy J. O'Hearn, Calvin P. Griffith, and Thomas R. Goots. Of counsel on the brief were Gregory A. Castanias, Lawrence D. Rosenberg, and Michael S. Fried, Jones, Day, Reavis & Pogue, of Washington, DC.

Before NEWMAN, LOURIE, and RADER, Circuit Judges.

Opinion for the court filed by Circuit Judge LOURIE. Circuit Judge PAULINE NEWMAN concurs in the judgment and dissents–in–part.

LOURIE, Circuit Judge.

The Lamson & Sessions Co. appeals from the decision of the United States District Court for the Northern District of Illinois: (1) denying its combined motion for judgment as a matter of law and for a new trial following a jury verdict in favor of Intermatic Incorporated that determined that certain Lamson outdoor electrical outlet covers infringed Intermatic's U.S. Patent 5,280,135; and (2) granting Intermatic's motion for judgment as a matter of law that claims 6, 9, and 11 are not invalid for obviousness. *Intermatic Inc. v. Lamson & Sessions Co.*, No 94–C–50295 (N.D.Ill. Oct. 20, 1999) (*"Intermatic I"*). Intermatic cross-appeals the district court's exclusion of certain evidence it proffered in support of future damages and the court's denial of enhanced damages and attorney fees. Intermatic also appeals from a separate decision of the district court in a second infringement lawsuit it filed against Lamson, which granted summary judgment of noninfringement of the '135 patent with respect to a separate line of Lamson outlet covers. *Intermatic Inc. v. Lamson & Sessions Co*, No. 99–C–50410, 2000 WL 1470393 (N.D.Ill. Sept.28,

2000) ("*Intermatic II* "). For the reasons set forth below, we affirm-in-part and reverse-in-part the decision of the district court in *Intermatic I,* and affirm in all respects its decision in *Intermatic II.*

## BACKGROUND

Intermatic's '135 patent is directed to a weatherproof electrical outlet cover. Typical weatherproof outlet covers provide outdoor electrical outlets with ample protection from "the elements" when the outlet has a cord from an electrical appliance plugged into one of its receptacles. '135 patent, col. 1, ll. 20–25. However, these covers are tailor-made to fit only a specific type of electrical outlet (*e.g.,* single-gang-vertical, single-gang-horizontal, double-gang). *Id.* at ll. 41–51. The outlet cover claimed in the '135 patent similarly provides electrical outlets with protection from the weather, but at the same time is capable of accommodating various types of electrical outlets through the use of a base plate with an aperture, a removable insert, and a protective housing. *Id.* at col. 2, ll. 29–33.

The '135 patent contains nineteen claims, and all but claims 2 and 19 are at issue in this appeal. Of the three independent claims implicated in this appeal, two limitations contained therein are at issue. Independent claim 1 reads as follows:

1. An outdoor weatherproof protective electrical outlet cover adapted to be attached in weatherproof connection to an electrical outlet comprising:

(a) a base plate adapted to be attached in weatherproof connection with the electrical outlet, the base plate having an aperture of sufficient size to accommodate the electrical outlet positioned in *a first orientation and a second orientation* wherein only one electrical outlet orientation can be accommodated at a given time;

(b) *an insert sized an [sic] adapted to fit within the aperture* of the base plate in a first orientation, the insert being of sufficient size to accommodate one electrical outlet orientation;

(c) a protective housing defining a closed space enclosing the electrical outlet even with at least one electrical plug present, the protective housing adapted to be mounted to the base plate.

*Id.* at col. 8, ll. 42–59 (emphasis added). Like claim 1, independent claim 12 also requires the outlet cover to have an "insert adapted to be accommodated within the aperture of the base plate" (hereinafter, the "insert within the aperture" limitation) and a base plate having an aperture capable of accommodating an electrical outlet positioned in "a first orientation and a second orientation" (hereinafter, the "multiple orientation" limitation). *Id.* at col. 9, ll. 31–50. Claim 14, the third independent claim at issue on appeal, was altered from its original form as the result of a reexamination proceeding initiated by Lamson during the pendency of the present lawsuit. Claim 14, with the additions and deletions resulting from the reexamination proceeding indicated by underlining and brackets, respectively, reads as follows:

14. A weather resistant outlet cover for a [sic ] electrical service device mounted in an electrical box comprising:

a base adapted to be mounted in a moisture resistant connection around the electrical box, *said base having an aperture therein;*

a housing pivotally connected to the base along an upper portion thereof and adapted to provide a moisture resistant enclosure in front of the electrical device; and

an insert adapted to be [mounted] *accommodated with* [sic ] *the aperture* in the base and further in which the insert includes at least an aperture therein

conforming in size and shape to the electrical service device.

U.S. Patent B1 5,280,135, col. 2, ll. 4–16. Thus, claim 14 also contains the "insert"

limitation,[1] but does not contain the "multiple orientation" limitation.

Figure 4 illustrates a typical outlet cover as claimed in the '135 patent:

FIG. 4

The outlet cover 10 is comprised of a base plate 12 that is mounted over the electrical outlet to be protected, wherein the base plate 12 has an aperture 26 that is large enough to encompass the plurality of styles and orientations of the plug receptacles in various electrical outlets. '135 patent, col. 2, ll. 22–26, col. 3, ll. 26–28. The insert 14 is then fitted within the aperture 26 of the base plate 12 in a flush manner to provide, in cooperation with the flange 50 and the raised ledge 51, a secure connection that protects the outlet from a variety of weather conditions. *Id.* at col. 4, ll. 5–15. The insert 14 may be placed in a variety of orientations depending on the type of electrical outlet to be protected. *Id.* at col. 2, ll. 29–33. The protective housing 16 is mounted over the base plate 12 to define a closed space of sufficient size to envelop an electrical outlet with at least

one plug engaged in a plug receptacle of that outlet. *Id.* at ll. 35–39.

Lamson manufactures a number of weatherproof electrical outlet covers, each of which utilizes a base plate, a protective housing, and either one or two inserts, depending on the type of electrical outlet to be protected. *Intermatic Inc. v. Lamson & Sessions Co.,* No 94–C–50295, slip op. at 3, 1999 WL 181977 (N.D.Ill. Mar. 30, 1999) (order). However, Lamson's outlet covers differ from the outlet cover claimed in the '135 patent in two respects that form the heart of the present infringement dispute. First, the inserts of Lamson's outlet covers do not fit within the aperture of the base plate. *Id.* Rather, each insert contains "ribs" that outline the general configuration of the outlet receptacles it is intended to cover, wherein the ribs extend into the aperture from the rear wall of the insert. *Id.* No other portion of the insert

---

1. Although each claim utilizes different language to express the "insert within the aperture" limitation, neither party has argued that any appreciable difference exists between the language used to express that limitation in the claims at issue. We therefore interpret the "insert within the aperture" limitation identically in all of the relevant claims.

extends into the aperture. Second, all of Lamson's covers are designed to be used with either horizontally oriented outlets or vertically oriented outlets, but a single outlet cover is not capable of accommodating both types of outlets. The following photograph illustrates a number of Lamson's "ribbed" inserts:

Intermatic filed suit against Lamson alleging that the following Lamson products infringed the '135 patent: (1) Lamson's E9UV(G,W,C) vertical single-gang outlet cover; (2) Lamson's E9UDV(G,W,C) deep vertical single-gang outlet cover; (3) Lamson's E9U2(G,W,C) double-gang outlet cover;[2] and (4) Lamson's E9UH(G,W,C) horizontal single-gang outlet cover (hereinafter, the "ribbed products"). *Id.* at 2–3. The district court construed the "insert within the aperture" limitation to require that the insert "have an outer dimension conforming to or smaller than the outer dimension of the aperture, and does not include the flange and the raised ledge so as to fit 'within the aperture.'" *Intermatic Inc. v. Lamson & Sessions Co.*, No 94–C–50295, 1999 WL 102767, at *2 (N.D.Ill. Feb.9, 1999) (order). The district court also construed the "multiple orientation" limitation to include not only base plates with apertures large enough to accommodate both horizontally and vertically oriented electrical outlets with a single insert, but also those able to accommodate orientations 180 degrees apart from one another. *Id.* at *1. In light of its claim construction, the court granted Lamson's motion for summary judgment that the ribbed products did not literally infringe the '135 patent, but denied Lamson's motion as to infringement under the doctrine of equivalents. *Intermatic Inc. v. Lamson & Sessions Co.*, No 94–C–50295, 1999 WL 181977, at *5 (N.D.Ill. Mar.30, 1999) (order). Thereafter, the jury found that Lamson's ribbed products infringed claims 1, 3, 4, 6–9, and 11 18 under the doctrine of equivalents, and found dependent claims 6, 9, and 11 invalid for obviousness. *Intermatic I.*

During the damages phase of the trial, the district court refused to allow Lamson

---

**2.** This product number refers to both the original and redesigned double-gang outlet cover, both of which are accused of infringing the '135 patent.

to introduce evidence of its recently redesigned line of outlet covers utilizing inserts not having a ribbed portion (hereinafter, the "ribless products") in order to demonstrate the existence of noninfringing substitutes. *Intermatic Inc. v. Lamson & Sessions Co.*, No 94–C–50295 (N.D.Ill. Aug. 27, 1999) (order). The court also refused to allow Intermatic to present certain evidence concerning the amount of future damages it will incur as a result of Lamson's infringement. *Intermatic Inc. v. Lamson & Sessions Co.*, No 94–C–50295 (N.D.Ill. Sept. 20, 1999) (order). The jury found that Lamson willfully infringed the '135 patent by selling its ribbed products, and awarded Intermatic damages for lost profits and price erosion in the amount of $12,500,000. *Intermatic I.*

Both parties filed multiple post-trial motions. Lamson filed a combined motion for JMOL or for a new trial on the grounds that, *inter alia:* (1) independent claims 1 and 12 must be found to have been obvious in view of the jury's finding that dependent claims 6, 9, and 11 were obvious; (2) Intermatic's equivalence evidence was legally insufficient and that, in any event, its equivalence claim was barred by prosecution history estoppel; (3) Intermatic was not entitled to lost profits; and (4) the district court erroneously excluded evidence of Lamson's ribless products. Intermatic filed post-trial motions seeking, *inter alia:* (1) enhanced damages; (2) attorney fees; and (3) JMOL that dependent claims 6, 9, and 11 would not have been obvious over the prior art in light of the jury's answers to special interrogatories that formed the basis for its nonobviousness verdict with respect to claims 1 and 12. The district court denied Lamson's combined motion for JMOL and for a new trial in all respects, but granted Intermatic's motion for JMOL that claims 6, 9, and 11 are not invalid for obviousness. *Id.*

Shortly after the district court entered judgment in *Intermatic I*, Intermatic filed suit against Lamson alleging that Lamson's ribless products, the very same products excluded from trial in *Intermatic I*, infringed the '135 patent. *Intermatic II* at *1. The district court granted Lamson's motion for summary judgment of noninfringement because it determined that, under its construction of the "insert within the aperture" limitation in *Intermatic I*, Lamson did not literally infringe as a matter of law, and prosecution history estoppel barred a finding of infringement under the doctrine of equivalents. *Id.* at *1–*2.

Lamson appeals from the district court's denial of its motion for JMOL of noninfringement, as well as from the court's grant of Intermatic's motion for JMOL that claims 6, 9, and 11 are not invalid for obviousness, in *Intermatic I*. Intermatic cross-appeals the court's exclusion of its future damages evidence and denial of enhanced damages and attorney fees in *Intermatic I*. Intermatic also appeals from the district court's grant of summary judgment of noninfringement in *Intermatic II*. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## DISCUSSION

▮▮ Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). We review a district court's grant of a motion for summary judgment *de novo*. *Ethicon Endo–Sur-*

*gery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1315, 47 USPQ2d 1272, 1275 (Fed. Cir.1998).

Judgment as a matter of law ("JMOL") is appropriate when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed.R.Civ.P. 50(a)(1). We review a district court's grant or denial of a motion for JMOL *de novo*, reapplying the JMOL standard used by the district court. *Sextant Avionique, S.A. v. Analog Devices, Inc.*, 172 F.3d 817, 824, 49 USPQ2d 1865, 1869 (Fed.Cir.1999). To prevail, an appellant "must show that the jury's findings, presumed or express, are not supported by substantial evidence or, if they were, that the legal conclusion(s) implied from the jury's verdict cannot in law be supported by those findings." *Perkin–Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 893, 221 USPQ 669, 673 (Fed. Cir.1984) (citation omitted).

A determination of infringement requires a two-step analysis. "First, the court determines the scope and meaning of the patent claims asserted ... and then the properly construed claims are compared to the allegedly infringing device." *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454, 46 USPQ2d 1169, 1172 (Fed. Cir.1998) (en banc) (citations omitted). Literal infringement requires that every limitation of the patent claim be found in the accused device. *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 821, 23 USPQ2d 1426, 1431 (Fed.Cir.1992). "An accused device that does not literally infringe a claim may still infringe under the doctrine of equivalents if each limitation of the claim is met in the accused device either literally or equivalently." *Cybor*, 138 F.3d at 1459, 46 USPQ2d at 1177. Claim construction is an issue of law, *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970–71, 34 USPQ2d 1321, 1322 (Fed.Cir.1995) (en

banc), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996), that we review *de novo*, *Cybor*, 138 F.3d at 1456, 46 USPQ2d at 1172. Determination of infringement, whether literal or under the doctrine of equivalents, is a question of fact. *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1125, 227 USPQ 577, 589 (Fed. Cir.1985) (en banc). Finally, the applicability of prosecution history estoppel is a legal question that we review *de novo*. *Cybor*, 138 F.3d at 1460, 46 USPQ2d at 1178.

### A. Claim Construction

#### 1. The "multiple orientation" limitation

Lamson argues that the district court erred in construing the "multiple orientation" limitation in claims 1 and 12 to cover one hundred eighty degree rotations of the insert. Lamson contends that the language of the claims and the specification make clear that the "multiple orientation" limitation requires an outlet cover that can encompass *both* horizontal and vertical electrical outlets by using a single, symmetrical insert that can be rotated ninety degrees. Intermatic responds that the plain language of the relevant claims and the specification allow one hundred eighty degree rotations of the insert to be included within the construction of the "multiple orientation" limitation. Intermatic further argues that claim 3, which depends from claim 1, claims the precise construction advocated by Lamson, and that therefore the doctrine of claim differentiation requires that the "multiple orientation" limitation not be restricted to outlet covers that accommodate both horizontal and vertical electrical outlets.

We agree with Intermatic that the district court properly construed the "multiple orientation" limitation to include one

hundred eighty degree rotations of the insert. Absent an express intent to impart a novel meaning, "terms in a claim are to be given their ordinary and accustomed meaning." *Renishaw PLC v. Marposs Societa' per Azioni,* 158 F.3d 1243, 1249, 48 USPQ2d 1117, 1121 (Fed.Cir.1998). The relevant claims at issue require that the aperture be large enough to enable the insert to fit within the aperture "in a first orientation and a second orientation." '135 patent, col. 8, ll. 48–49, col. 9, ll. 38–39. The ordinary meanings of the terms "first" and "second" do not require that the orientations be separated by any specific degree of rotation, such as the ninety degree difference argued by Lamson. Rather, such language broadly claims an outlet cover with an aperture large enough to accommodate an insert placed in *any* two orientations, whether those orientations be separated by one hundred eighty degrees, ninety degrees, or any other degree of rotation.

The specification supports this construction of the "multiple orientation" limitation. The "Summary of the Invention" states that "the insert may be fitted within the aperture of the base plate *in a plurality of orientations* in order to encompass electrical outlets of *either* a horizontal orientation or a vertical orientation." *Id.* at col. 2, ll. 30–33 (emphasis added). That language suggests that, in addition to being able to rotate the insert ninety degrees to accommodate both a vertical and horizontal outlet with the same outlet cover, the insert may be rotated one hundred eighty degrees, *i.e.,* turned upside down, to accommodate *only* a horizontally oriented outlet or *only* a vertically oriented outlet. Such a degree of rotation may be necessary, for example, to accommodate outlets in which the plug receptacles are not arranged in a symmetrical fashion. Indeed, the examiner recognized this very use of the claimed outlet cover, stating that "[a]n insert ... could be placed in two different

orientations ... each 180° apart." The ninety degree rotation construction proffered by Lamson is therefore merely a preferred embodiment of the invention. *See id.,* col. 3, ll. 49–59 ("*In this embodiment* ... the aperture and the insert are such that the insert *can* be positioned in the aperture in two separate orientations ...90&A1 apart.").

Moreover, claim 3 of the '135 patent, which is dependent on claim 1, differs from the latter only in that the aperture must be "of sufficient size to enclose an electrical outlet positioned *in a first substantially vertical position and a second substantially horizontal position* ...." *Id.* at col. 8, ll. 65–67 (emphasis added). Under the doctrine of claim differentiation, each claim in a patent is presumptively different in scope. *Comark Communications, Inc. v. Harris Corp.,* 156 F.3d 1182, 1187, 48 USPQ2d 1001, 1005 (Fed.Cir.1998). This presumption can be strengthened under certain circumstances. One of those circumstances was espoused in *Wenger Manufacturing, Inc. v. Coating Machinery Systems, Inc.,* wherein this court stated that "[c]laim differentiation, while often argued to be controlling when it does not apply, is clearly applicable when there is a dispute over whether a limitation found in a dependent claim should be read into an independent claim, and that limitation is the only meaningful difference between the two claims." 239 F.3d 1225, 1233, 57 USPQ2d 1679, 1685 (Fed.Cir.2001). Because the only meaningful difference between claim 1 and claim 3 involves the potential orientations of the insert, the doctrine of claim differentiation provides additional support for not limiting the "multiple orientation" limitation to the construction proposed by Lamson. We therefore conclude that the district court did not err in interpreting the "multiple orientation" limitation to include

one hundred-eighty degree rotations of the insert.

### 2. The "insert within the aperture" limitation

Although Lamson's products were found to have satisfied the "insert within the aperture" limitation under the doctrine of equivalents, Intermatic argues that that limitation is literally met under the proper interpretation of its claims. Intermatic contends that the district court erred in its construction of the "insert within the aperture" limitation by excluding a preferred embodiment of the invention, and that the proper interpretation of that limitation is that the claimed "insert" is comprised of not only what it styles as the "insert plate," which is what the district court found to be the actual "insert," but also includes the flange and the raised ledge connected to it. Lamson responds that the court properly construed the "insert within the aperture" limitation to exclude the flange and the raised ledge because the specification teaches that those structures are separate from the claimed "insert."

 We conclude that the district court properly construed the "insert within the aperture" limitation to exclude the flange and the raised ledge. When the meaning of a term used in a claim is sufficiently clear from its definition in the patent specification, that meaning shall apply. *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1477, 45 USPQ2d 1429, 1432 (Fed.Cir.1998); *Intellicall, Inc. v. Phonometrics, Inc.*, 952 F.2d 1384, 1388, 21 USPQ2d 1383, 1387 (Fed.Cir.1992). The specification states that

> [t]he insert 14 has a top edge 42, a bottom edge 44 and two side walls 46 and 48. *A flange 50 extends around the periphery of the insert.* The flange 50 is sized and adapted to fit securely within the recess 40 of the base plate 12 in

order to form a connection with the base plate 12. *A raised ledge 51 is located on the face of the insert 14 around the periphery of the aperture 26 and flange 50.*

'135 patent, col. 4, ll. 5–12 (emphasis added). The specification therefore makes clear that the claimed "insert" is something separate from, but connected to, the flange and the raised ledge. Accordingly, the district court did not err in interpreting the "within the aperture" limitation to require the plate-like structure comprising the "insert," which does not include the flange and raised ledge, to fit within the aperture of the base plate.

### B. Literal Infringement

 Intermatic argues that the district court erred by granting summary judgment that the ribbed products do not literally infringe the '135 patent in *Intermatic I.* Intermatic contends that even under the district court's construction of that limitation, which we affirm in the immediately preceding section, Lamson's ribbed outlet covers literally infringe the '135 patent. Intermatic argues that the ribbed portion of Lamson's insert, which fits completely within the aperture, comprises the claimed "insert," while the remaining portion of the insert is akin to the flange and the raised ledge, which is considered separate from the "insert" under the district court's construction.

Intermatic's argument is not persuasive. To view the ribbed portion of Lamson's inserts, and only that portion, as comprising the claimed "insert" completely distorts the way that structure is defined in the '135 patent. Although, as discussed above, the specification explains that the "insert" is separate from the flange and the raised ledge, that passage cannot be read to support the view that anything within the aperture of the base plate is the "insert," while anything outside of the ap-

erture is analogous to the flange and the raised ledge. If that were the case, then *any* structure having any portion within the aperture would satisfy the "insert within the aperture" limitation. The specification makes clear that the "insert" is the plate-like structure that serves to fill the void between the aperture in the base plate and the electrical outlet being protected. *See id.* at col. 3, ll. 59–62. We therefore reject this strained application of that limitation to the accused device, and conclude that the district court did not err in granting summary judgment that Lamson's ribbed products do not literally infringe the '135 patent as a matter of law.

C. *Infringement under the Doctrine of Equivalents*

1. *Lamson's ribbed outlet covers*

Lamson argues that the district court erred by allowing the jury to determine whether its ribbed weatherproof outlet covers infringe the '135 patent under the doctrine of equivalents. Lamson contends that prosecution history estoppel bars Intermatic from claiming that the ribbed portion of its inserts satisfies the "insert within the aperture" limitation.

Intermatic responds that substantial evidence supports the jury's finding of equivalence. Intermatic argues that it demonstrated at trial that the ribs in Lamson's inserts serve the same mounting and weatherproofing functions as the "insert within the aperture" limitation, and that the ribs achieve the same weatherproofing result in substantially the same way. Intermatic also argues that prosecution history estoppel does not bar its assertion of equivalence, and that, in any event, any applicable estoppel is limited to reexamined claim 14.

Claim 14, as originally filed, required that the "insert [be] adapted to be mounted in the base...." *Id.* at col. 10, l. 11. That claim, as was the case with the re-

mainder of the claims of the '135 patent, was not amended during the initial prosecution and issued in substantially the same form set forth above. During reexamination, however, the examiner rejected that claim because he determined that certain prior art references read on the "mounted in the base" phrase. In response, Intermatic amended claim 14 to require that the insert be "adapted to be accommodated with[in] the aperture in the base," and argued that the claim as amended was patentable over the prior art. Thereafter, the examiner determined that claim 14 was in condition for allowance, and the United States Patent and Trademark Office issued a reexamination certificate containing the amendment. U.S. Patent B1 5,280,135, col. 2, ll. 4–16.

When an amendment narrows the scope of a claim for a reason relating to patentability, no range of equivalents is available for that amended claim limitation. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 234 F.3d 558, 569, 576, 56 USPQ2d 1865, 1872, 1878 (Fed.Cir. 2000) (en banc), *cert. granted,* —— U.S. ——, 121 S.Ct. 2519, 150 L.Ed.2d 692 (2001) (No. 00–1543). Accordingly, because the "insert within the aperture" limitation in reexamined claim 14 was added for a reason relating to patentability, *i.e.,* to avoid the prior art, Intermatic is barred from obtaining any range of equivalents for that limitation.

Furthermore, that equivalence bar extends to all of the claims in which the "insert within the aperture" limitation appears. In *Builders Concrete, Inc. v. Bremerton Concrete Products Co.*, this court addressed the question whether prosecution history estoppel applies to a claim containing a limitation that was added to another, separate claim to avoid prior art, where that limitation appeared in the claim in its original form and was not amended during prosecution. 757 F.2d

255, 225 USPQ 240 (Fed.Cir.1985). In *Builders,* a "passage" limitation was incorporated into independent claim 1 from dependent claim 2 during prosecution to avoid a prior art rejection. *Id.* at 259, 225 USPQ at 243. Claim 10, a separate independent claim, also contained the "passage" limitation as originally filed, and thus did not require any amendment to place that claim in condition for allowance. *Id.* In addressing whether the estoppel resulting from the amendment to claim 1 also applied to claim 10, the court stated:

> Although claim 10 is the only claim in suit, the prosecution history of all claims is not insulated from review in connection with determining the fair scope of claim 10. To hold otherwise would be to exalt form over substance and distort the logic of this jurisprudence, which serves as an effective and useful guide to the understanding of patent claims. The fact that the "passage" clause of patent claim 10 was not itself amended during prosecution does not mean that it can be extended by the doctrine of equivalents to cover the precise subject matter that was relinquished in order to obtain allowance of claim 1.

*Id.* at 260, 225 USPQ at 243. Thus, the court in *Builders* held that prosecution history estoppel barred the patentee in that case from asserting equivalence between the accused structure and claim 10 of its patent as a result of the addition of the same "passage" limitation in claim 1 to avoid the prior art. *Id.*

■■■ We conclude that the principles espoused in *Builders* equally apply to a claim limitation that was narrowed in order to obtain allowance of a claim during

reexamination, despite the fact that the resulting estoppel may retroactively extend to original, unamended claims, and hold that any estoppel generated by such an amendment applies to all other claims in the patent containing that limitation. To conclude otherwise would be "to exalt form over substance," *id.,* and subject a limitation to multiple ranges of equivalence depending upon whether or not that limitation was amended in any particular claim, *see Am. Permahedge, Inc. v. Barcana, Inc.,* 105 F.3d 1441, 1446, 41 USPQ2d 1614, 1618 (Fed.Cir.1997) ("[W]e see no reason to assign different ranges of equivalents for the identical term used in different claims in the same patent, absent an unmistakable indication to the contrary."). Moreover, arguments made to distinguish prior art during reexamination proceedings are retroactively applied to limit the scope of a claim limitation as of the issue date of the patent, not the date those arguments were made. *See, e.g., Cole v. Kimberly–Clark Corp.,* 102 F.3d 524, 532, 41 USPQ2d 1001, 1007 (Fed.Cir.1997) (interpreting broader scope of means-plus-function limitation to have been disclaimed by arguments made by patentee to distinguish the prior art in two reexamination proceedings). For purposes of prosecution history estoppel, we see no reason to treat amendments made during reexamination differently. We therefore reject Intermatic's assertion at oral argument that the timing of a narrowing amendment dictates the applicability of prosecution history estoppel, and conclude that none of the claims at issue are entitled to any range of equivalents regarding the "insert within the aperture" limitation under the law set forth in *Festo.*[3]

---

**3.** We note that the dissent-in-part, while agreeing that under *Builders* the estoppel created by an amendment of a limitation applies to all unamended claims containing that same limitation, argues that the unamended claim is nevertheless entitled to a range of equiva-

lence for that limitation for subject matter not relinquished by the amendment. The dissent-in-part thus contends that any claim in which that limitation was amended is subject to the absolute bar rule of *Festo,* but that any claim containing that very same limitation in un-

As we have already determined in section B, *supra,* that Lamson's ribbed products do not literally satisfy the "insert within the aperture" limitation, our conclusion that no equivalence can be found means that those products cannot infringe the '135 patent as a matter of law. Accordingly, we conclude that the district court erred in denying Lamson's motion for JMOL of noninfringement.

Because we have determined that Lamson's ribbed products do not meet the "insert within the aperture" limitation, we need not address whether those products satisfy the "multiple orientation" limitation.

### 2. *Lamson's ribless outlet covers*

Intermatic does not argue that Lamson's ribless outlet covers literally infringe the '135 patent. Furthermore, as discussed above, Intermatic is not entitled to any range of equivalents with respect to the "within the aperture" limitation. The district court therefore did not err in granting summary judgment in *Intermatic II* that Lamson's ribless outlet covers do not infringe the '135 patent.

### D. *Invalidity*

 Although we have determined that none of Lamson's products infringe the '135 patent, Lamson has asserted a counterclaim of invalidity in the form of a request for a declaratory judgment. Our determination of noninfringement does not make Lamson's counterclaim moot, *see Cardinal Chem. Co. v. Morton Int'l, Inc.,* 508 U.S. 83, 96, 113 S.Ct. 1967, 124 L.Ed.2d 1, 26 USPQ2d 1721, 1727 (1993) (holding that a finding of noninfringement does not moot a counterclaim seeking a declaratory judgment of invalidity), and we therefore must address the inconsistent

obviousness verdicts issue. The issue of inconsistent verdicts is a procedural issue that is not unique to patent law. Thus, this court applies the law of the regional circuit, in this case the Seventh Circuit, to the issue of inconsistent verdicts. *Mycogen Plant Sci., Inc. v. Monsanto Co.,* 243 F.3d 1316, 1325, 58 USPQ2d 1030,' 1037 (Fed.Cir.2001).

The jury provided answers to twenty-three special interrogatories directed to the obviousness *vel non* of the disputed claims of the '135 patent. *Intermatic Inc. v. Lamson & Sessions Co.,* No 94–C–50295 (N.D.Ill. Oct. 20, 1999) (order). After answering the interrogatories, the jury found all of the independent claims to be not invalid for obviousness; however, the jury did find dependent claims 6, 9, and 11 to be invalid. *Id.* Thereafter, upon Intermatic's motion for JMOL, the district court determined that the jury's findings with respect to claims 6, 9, and 11 conflicted with their findings regarding the independent claims and their special interrogatory answers, and granted JMOL that claims 6, 9, and 11 are not invalid for obviousness. *Id.*

Lamson argues, citing *Stone v. City of Chicago,* 738 F.2d 896 (7th Cir.1984), that because the jury verdicts are incompatible, and that because there was ample evidence suggesting that all of the claims of the '135 patent are invalid for obviousness, the district court erred by failing to order a new trial. Intermatic responds that the district court correctly used the jury's special interrogatory answers to resolve the conflict between the verdicts under Federal Rule of Civil Procedure 49(b), and that the court properly confirmed the validity of all of the claims of the '135 patent as a matter of law.

---

amended form is analyzed under the flexible bar approach rejected in *Festo.* We fail to see

a basis for that distinction.

The rule set forth in *Stone* is inapplicable to the case at hand, as that rule is only implicated where verdicts are "logically incompatible" to the extent that they cannot be reconciled by reference to the evidence supporting them. *Stone*, 738 F.2d at 899. Rule 49(b), on the other hand, deals, *inter alia*, with the situation in which two general verdicts are inconsistent with one another, but the differences between them can be resolved by referring to the jury's answers to the special interrogatories underlying those verdicts. Rule 49(b) provides in relevant part that:

> When the [interrogatory] answers are consistent with each other but one or more is inconsistent with the general verdict, judgment may be entered pursuant to Rule 58 in accordance with the answers, notwithstanding the general verdict, or the court may return the jury for further consideration of its answers and verdict or may order a new trial.

Fed.R.Civ.P. 49(b). Thus, the district court has three options when faced with an inconsistent general verdict based on consistent special interrogatory answers. The court may: (1) order the jury to consider its answers further; (2) order a new trial; or (3) harmonize the verdict with the answers. *Campbell v. Ingersoll Milling Mach. Co.*, 893 F.2d 925, 930 (7th Cir. 1990). In the case at hand, the jury's answers overwhelmingly indicate that the prior art does not disclose an insert "within the aperture," as required by independent claims 1, 12, and 14. Therefore, because dependent claims 6, 9, and 11 each contain the "insert within the aperture" limitation, in addition to other limitations that further differentiate those claims from their respective independent claims, *see* 35 U.S.C. § 112, ¶ 4 (1994), it follows *a fortiori* that those claims are also not invalid over the cited prior art, *Hartness Int'l, Inc. v. Simplimatic Eng'g Co.*, 819 F.2d 1100, 1108, 2 USPQ2d 1826, 1831 (Fed.Cir. 1987). Accordingly, we conclude that the district court did not err in granting JMOL that neither dependent claims 6, 9, and 11 nor any of the remaining disputed claims of the '135 patent are invalid for obviousness.

Because we reverse on infringement, the remaining issues concerning the exclusion of evidence, damages, and attorney fees are moot.

## CONCLUSION

The district court erred in denying Lamson's motion for JMOL of noninfringement of the ribbed products in *Intermatic I*. However, the court correctly granted Intermatic's motion for JMOL that claims 6, 9, and 11 of the '135 patent are not invalid for obviousness. Finally, the district court properly granted summary judgment of noninfringement of the ribless products in *Intermatic II*. Accordingly, with respect to *Intermatic I*, we

*AFFIRM–IN–PART* and *REVERSE–IN–PART*.

As to *Intermatic II*, we

*AFFIRM.*

PAULINE NEWMAN, Circuit Judge, concurring in the judgment, dissenting in part.

On review of the facts and law of this case, I reach the same result as does the court. However, I do not endorse the new ruling that an unamended claim is barred from access to any degree of equivalency simply because a broader claim was amended during prosecution.

It has long been the law that estoppel affects the scope of equivalents available to an unamended claim, when a broader claim is amended for reasons of patentability. That was the holding in *Builders Concrete, Inc. v. Bremerton Concrete Products Co.*, 757 F.2d 255, 260, 225 USPQ 240, 243 (Fed.Cir.1985), and reflects the traditional

rules of estoppel. It is properly applied in reexamination, as the court's opinion explains. However, the court today enlarges that estoppel to enhance the absolute bar of *Festo*, even though the claim was not amended. The court thus holds that the amendment of a broader claim bars access to any scope of equivalency as to the unamended narrower claim, whether or not the accused infringer is practicing subject matter that was required to be relinquished. In *Festo* this court did not go so far; I see no need to do so in order to respect the principles of *Festo*.

*Festo* does not prevent an unamended claim from serving as a source of equivalency, subject to estoppel against recovering by equivalency the subject matter that was relinquished in order to achieve patentability of a different claim. This decision, by extending the *Festo* absolute bar to such unamended claims, will give the coup de grace to this vestige of the doctrine of equivalents. The consequences for patent prosecution, with its traditional presentation of claims of diminishing scope, have not been explored by the parties or by the court. I respectfully dissent from the majority's ruling on this aspect.