**BECKSON MARINE, INC.,** Carole A. Beckerer, Eloise Brady, and Joan A. Jones, Plaintiffs–Appellants,

v.

**NFM, INC.,** Defendant–Cross Appellant.

Nos. 01–1301, 01–1316.

United States Court of Appeals, Federal Circuit.

DECIDED: May 30, 2002.

Allen D. Brufsky, Allen D. Brufsky, P.A., of Bokeelia, Florida, argued for plaintiffs-appellants. Of counsel was Rex B. Stratton, Stratton Ballew, of Seattle, Washington.

David L. Garrison, Garrison & Associates PS, of Seattle, Washington, argued for defendant-cross appellant.

Before NEWMAN, RADER, and SCHALL, Circuit Judges.

RADER, Circuit Judge.

On summary judgment, the United States District Court for the Western District of Washington determined that NFM, Inc. does not infringe Beckson Marine, Inc.'s United States Patent No. 4,363,350 ('350 patent). *Beckson Marine, Inc. v. NFM, Inc.*, No. C98–5531 FDB (W.D.Wash. Nov. 19, 1999). The district court also determined that the '350 patent was not invalid and that Beckson had not, therefore, violated the Lanham Act, Sherman Act, or the Washington State Consumer Protection Act by asserting an invalid patent. *Beckson Marine, Inc. v. NFM, Inc.*, No. C98–5531 FDB (W.D.Wash. March 6, 2001). Because the record does not support the trial court's

claim interpretation, this court vacates and remands.

I.

Frank Beckerer, Sr. invented the device claimed in the '350 patent. Mr. Beckerer filed the application for the '350 patent on November 3, 1980. The patent expired on November 3, 2000. Beckson exclusively licensed the '350 patent from a family trust established by Mr. Beckerer. The '350 patent claims a portlight described by the specification as an improvement over United States Patent No. 4,095,640 ('640 patent). The inventor of the '640 patent is Frank Beckerer, Jr.—Mr. Beckerer's son and Beckson's president. Figs. 1 and 4 of the '350 patent are a back-view (e.g., from the interior of a boat) and a side-view, respectively, of a preferred embodiment:

*Fig. 4*

Portlights provide a window in the wall of a boat. The portlight disclosed by the '350 patent closes from the inside. The Fig. 4 side-view depicts the window as number 20 and the boat wall as number 14. A mounting flange 12 extends around the periphery of the portlight and connects to the boat wall. A spigot 18 with outer walls 86, 88 runs perpendicular to the mounting flange. The spigot extends through the boat wall, with the upper side of its lower portion providing a sill 90 for the portlight. The sill includes drains 98, and 102 (not shown) to prevent an accumulation of water that may enter the boat when the portlight is opened. This summary judgment motion focuses on the draining feature of the sill. Claim 1 of the '350 patent defines the subject matter of Figs. 1 and 4:

 1. In a self-draining, leak-resistant boat window, in combination:

 (a) a frame body comprising a continuous mounting flange for engagement with an inner surface surrounding an opening in the wall of a boat,

 (b) said body including a spigot connected with said flange and defining the window opening and having a lower portion characterized by an upwardly-facing drain surface constituting a sill, said spigot being adapted to extend through said wall opening of the boat,

 (c) a window pane for closing off the window opening formed by the spigot, and

 (d) means hingedly connecting said window pane to said mounting flange,

 (e) said sill of the spigot having a portion which is downwardly offset with respect to remaining areas of the sill, said downwardly offset portion being

provided with a *sloping drain groove* extending from a high location closely adjacent said mounting flange to a low location disposed remote from the mounting flange [sic]

(f) said *drain groove* being open at the top for a substantial portion of its length, thereby defining an open channel which resists the tendency for residue to form therein and cause possible clogging.

col. 7, ll. 1–27 (emphases added).

NFM is a Washington corporation that manufactures and sells metal portlights for boats and yachts. NFM's original product was an oval-shaped cast metal portlight with a covered drain beneath the sill. NFM began producing this portlight in August 1979. In 1995, NFM began producing a rectangular portlight with open drains. This rectangular portlight is the product accused of infringement. The accused spigot drains water from its sill with sloped depressions. When Beckson asserted its '350 patent against its rectangular portlight, NFM modified its accused portlight by placing small rectangular metal bridges partially over the sloped drains.

Beckson asserted the '350 patent against NFM in the United States District Court for the District of Florida. The Florida district court transferred the suit to the United States District Court for the Western District of Washington. Then NFM counterclaimed that the '350 patent was either obvious or anticipated, and that Beckson violated the Lanham Act, Sherman Act, or Washington State Consumer Protection Act by asserting a patent that it knew or should have known to be invalid. After the district court construed the claims, NFM moved for summary judgment of non-infringement, which the district court granted.

NFM also sought summary judgment on its counterclaims that Beckson sought to have dismissed. The district court denied NFM's motion and granted Beckson's motion. Because it found the '350 patent not invalid, the district court dismissed NFM's counterclaims as moot. Beckson appeals the grant of summary judgment of non-infringement while NMF appeals the validity of the '350 patent and the dismissal of its anticompetition counterclaims. This court has jurisdiction under 28 U.S.C. § 1295(a)(1) (1994).

## II.

▆▆▆ This court reviews without deference a district court's grant of summary judgment and draws all reasonable factual inferences in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Cortland Line Co. v. Orvis Co.,* 203 F.3d 1351, 1355–56, 53 USPQ2d 1734, 1736 (Fed.Cir.2000). This court decides for itself whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). This court also reviews without deference questions of claim construction. *Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1454, 46 USPQ2d 1169, 1174 (Fed.Cir.1998) (*en banc*). Infringement, however, is a question of fact, *Bai v. L & L Wings, Inc.,* 160 F.3d 1350, 1353, 48 USPQ2d 1674, 1676 (Fed.Cir.1998), that a court is not to resolve on summary judgment unless no genuine factual issue remains, *Bell Atl. Network Servs., Inc. v. Covad Communs. Group, Inc.,* 262 F.3d 1258, 1265, 59 USPQ2d 1865, 1869 (Fed.Cir.2001). Obviousness is a question of law, *Graham v. John Deere Co.,* 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), premised on underlying factual determinations, *Denni-*

*son Mfg. v. Panduit Corp.*, 475 U.S. 809, 810–11, 106 S.Ct. 1578, 89 L.Ed.2d 817 (1986). Anticipation is a question of fact. *Atlas Powder Co. v. Ireco, Inc.*, 190 F.3d 1342, 1346 (Fed.Cir.1999). Therefore, a district court properly may grant summary judgment on obviousness or anticipation only when the underlying factual inquiries present no lingering genuine issues.

■ Claim language defines claim scope. *SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1121, 227 USPQ 577, 586 (Fed.Cir.1985) (*en banc*). As a general rule, claim language carries the ordinary meaning of the words in their normal usage in the field of invention. *Toro Co. v. White Consol. Indus.*, 199 F.3d 1295, 1299, 53 USPQ2d 1065, 1067 (Fed.Cir.1999). Nevertheless, the inventor may act as his own lexicographer and use the specification to supply implicitly or explicitly new meanings for terms. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979–80, 34 USPQ2d 1321, 1330 (Fed.Cir.1995) (*en banc*). Thus, to help determine the proper construction of a patent claim, a court consults the written description, and, if in evidence, the prosecution history. *Id.*

In this case, the district court based its holding of non-infringement entirely on its construction of the term "sloping drain groove," the only claim term that it construed.[1] The district court construed "sloping drain groove" to require "a highly specific U-shaped drain channel of constant diameter/width, as shown in the figures accompanying the '350 patent." In addition to the patent figures, the district court also relied heavily upon claims 5 and 6 that depend from claim 1. Those claims

provide, respectively, that "the bottom wall of the drain groove is curvilinear lengthwise, and is concave," and "the downwardly offset portion of the spigot is generally of U-shaped cross section, taken vertically."

■ A full review of the patent shows that the district court improperly narrowed the scope of claim 1 by importing limitations from the specification and from dependent claims 5 and 6. *Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1347, 49 USPQ2d 1199, 1203 (Fed.Cir.1998) ("a court may not import limitations from the written description into the claims"); *Intermatic Inc. v. Lamson & Sessions Co.*, 273 F.3d 1355, 1364, 61 USPQ2d 1075, 1081–82 (Fed.Cir.2001) ("each claim in a patent is presumptively different in scope"). As this court herein explains, the term "sloping drain groove" requires only a sloping artificial channel to carry water. Of course, other claim terms may impart other limitations.

NFM defends the district court's summary judgment based on the ordinary meaning of the claim terms and the specification's disclosure of a long and narrow drain groove. In support of its ordinary meaning contention, NFM cites to one common usage of the term "groove"— namely "[a] long narrow furrow or channel." *The American Heritage Dictionary of the English Language* (4th ed. 2000). NFM also dwells on the long narrow drain grooves shown in the patent figures. NFM's citation to a single common usage of "groove," however, does not account for other common meanings of the term. For example, a "groove" is also "[a] channel or

---

1. NFM asserts that three other claim terms provide alternative bases upon which this court may affirm the judgment of the district court: "downwardly offset portion," "means hingedly connecting," and "drain surface constituting a sill." Because the district court has not yet construed these other terms, however, this court has as yet no claim construction to review on those terms. The district court will have the opportunity to construe those additional terms, if necessary, on remand.

hollow, cut by artificial means, in metal, wood, etc." *The Oxford English Dictionary* (2d ed. 1989). This definition does not require a narrow width or a specific length. "Channel," as well, may be "[a]n artificial course for running water or any liquid" or "[a] hollow bed of running waters." *Id.* Thus, ordinary meaning alone does not necessarily limit the claim terms to long U-shaped channels.

The specification figures show long, narrow drains. These figures, however, are only part of the specification. The long narrow grooves depicted as a preferred embodiment within the '350 patent are not the entirety of the patent's disclosure. The patent specification also describes broadly the grooves in relation to the water that they drain. Particularly, the specification provides that the "auxiliary draining structures are provided to effectively drain off water under virtually all conditions." col. 2, ll. 25–27. The broad term "draining structures" suggests that the applicant did not limit the claim term "groove" to a specific width or length. In fact, the written description does not require long and narrow grooves at any point.

Upon review of the entirety of evidence bearing on the meaning of "groove," this court determines that the ordinary meaning is not limited to long and narrow U-shaped entities, but encompasses as well other structures that drain water. Similarly, this court does not construe the figures depicting a single preferred embodiment as limiting the claim terms in light of other language in the written description embracing other draining structures. In sum, this court construes the term "slop-

ing drain groove" as a sloping artificial channel for flowing water.

■ After claim construction, the infringement inquiry shifts to a comparison of the claim with the allegedly infringing device. *Kemco Sales, Inc. v. Control Papers Co.*, 208 F.3d 1352, 1359, 54 USPQ2d 1308, 1312 (Fed.Cir.2000). To prove infringement, the patentee must show that the accused device contains each limitation of the asserted claim, *Mas–Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1211, 48 USPQ2d 1010, 1014 (Fed.Cir. 1998), or an equivalent of each limitation, *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997). This comparison is a question of fact. *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353, 48 USPQ2d 1674, 1676 (Fed.Cir.1998). Because this court cannot resolve such factual issues, a change in the claim construction at the appellate level generally necessitates a remand to the district court to resolve the new factual issues raised by the new claim construction, except, of course, in the rare instance that the record on appeal leaves no genuine issues of material fact and entitles the movant to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The figure below is a front-view of NFM's accused portlight. The figure illustrates the accused portlight's drainage structure—two sloped depressions in the portlight sill. Each sloped depression channels water off of the sill. In other words, each

sloped depression is an artificial channel for running water. Hence, the accused NFM open-sloped portlight includes a sloping drain groove as required by claim 1.

In granting summary judgment of non-infringement, the district court determined, based on its erroneous claim construction, that the accused portlight does not include a sloping drain groove. Moreover, although NFM alleged infringement under the doctrine of equivalents, the district court performed no analysis to determine infringement under that doctrine. This court, therefore, vacates the district court's judgment of non-infringement and remands for additional claim construction on other limitations of the claim, and for a determination of infringement based on a complete claim construction.

III.

 Because of the presumption of validity, 35 U.S.C. § 282 (1994), a defendant must show invalidity by facts supported by clear and convincing evidence. *Dana Corp. v. Am. Axle & Mfg.*, 279 F.3d 1372, 1375, 61 USPQ2d 1609, 1610 (Fed. Cir.2002). Invalidity often entails evidence that prior art renders the patent either anticipated or obvious. "Anticipation un-der 35 U.S.C. § 102 means lack of novelty, and is a question of fact. To anticipate, every ... limitation of the claimed invention must be found in a single prior art reference." *Brown v. 3M*, 265 F.3d 1349, 1351, 60 USPQ2d 1375, 1376 (Fed.Cir. 2001) (citations omitted). Moreover, "[w]hen a claim covers several structures or compositions, either generically or as alternatives, the claim is deemed anticipated if any of the structures or compositions within the scope of the claim is known in the prior art." *Id.*

 An obviousness inquiry assesses "the differences between the subject matter sought to be patented and the prior art" to ascertain whether "the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a) (1994). Obviousness is a legal conclusion based on underlying findings of fact. *In re Dembiczak*, 175 F.3d 994, 998, 50 USPQ2d 1614, 1616 (Fed.Cir. 1999). The underlying factual inquiries are: "(1) the scope and content of the prior art; (2) the level of ordinary skill in the prior art; (3) the differences between the claimed invention and the prior art; and

(4) objective evidence of nonobviousness."
*Id.*

NFM asserts that several prior art references render the '350 patent invalid. Those references include the NFM oval portlight as well as portlights manufactured and sold by a French company now known as Goiot Innovation (Goiot). Goiot manufactured and sold a closed-drain portlight and an open-drain portlight that are relevant here. Beckson admits that the Goiot closed-drain portlight is prior art. However, the district court excluded both the NFM oval portlight and the Goiot open-drain portlight from the invalidity inquiry. This court examines those exclusion decisions.

■ Beckson initially asserted the '350 patent against the NFM oval portlight. Based upon its claim construction, the district court found that the NFM oval portlight did not infringe the '350 patent. During that inquiry, NFM produced evidence that its oval portlight predated the '350 patent's critical date. NFM sought, therefore, to use the oval portlight against the '350 patent as invalidating prior art. The district court held that because the oval portlight did not infringe the '350 patent, it also could not "serve as a basis for a judgment of invalidity." To the contrary, any analogous or pertinent prior art plays a role in the determination of the patentability of the claims at the time of invention. In other words, a reference need not anticipate the invention to serve as prior art. Indeed the obviousness inquiry weighs the differences between the claimed invention and non-anticipating prior art references to determine whether one of skill in the art would have considered the invention obvious at the time of invention. Thus, the NFM oval portlight is prior art for assessing the validity of the '350 patent.

■ At one point, Beckson asserted that the NFM oval portlight literally infringed the '350 claims. This assertion, however, does not serve as an admission that the '350 patent encompasses the prior art, thus rendering that patent invalid. Beckson's allegation of infringement before it realized that the oval portlight was prior art was based on its subjective belief at the time regarding the scope of its claims. These litigation theories—to the extent not expressed in claim language, the patent specification, or the prosecution history—do not affect claim scope or bear on patent validity. Thus, Beckson's assertion of infringement, standing alone, does not admit the invalidity of the '350 patent. On the other hand, if the record shows that Beckson asserted infringement against the NFM oval portlight based on a claim construction identical to the correct judicial claim construction, then Beckson's assertion could serve as additional evidence of invalidity, or even anticipation. After all, "that which will [literally] infringe, if later, will anticipate, if earlier." *See, e.g., Lewmar Marine, Inc. v. Barient, Inc.,* 827 F.2d 744, 747, 3 USPQ2d 1766, 1768 (Fed.Cir.1987).

Thus, on remand, the trial court will have the opportunity to consider NFM's oval portlight prior art in light of a complete claim construction. If the NFM oval portlight has each and every limitation of the claimed invention, it will anticipate the '350 patent and render it invalid. If the oval portlight prior art does not anticipate, it may nonetheless serve as prior art for consideration in conjunction with other prior art in the obviousness inquiry. Depending on the ultimate claim construction, Beckson's assertion of infringement against NFM's oval portlight may serve as additional evidence during the patentability inquiry.

With respect to the Goiot open-drain portlight, NFM relied upon the testimony and documents of Mr. Maxwell Hazelwood,

a United States Goiot distributor since 1983. The district court found NFM's evidence insufficient to establish the Goiot open-drain portlight as prior art. For example, in his deposition testimony Mr. Hazelwood could not pinpoint when Goiot began offering the open-drain portlight or when he had first become aware of that portlight prior to 1983. Mr. Hazelwood also admitted that he could not determine with certainty that a 1974 Goiot catalog or a Goiot advertisement in the September 1977 issue of *Yachting Magazine* disclosed the open-drain portlight. Based on the record at this stage of the lawsuit, therefore, the district court did not err in determining that the Goiot open-drain portlight was not prior art to the '350 patent.

In resolving the issue of anticipation, the district court examined only the Goiot open-drain portlight. The district court so limited itself because it read claim 1 to require a completely open drain channel. The claim is not so limited, as the sloping "drain groove [may be] open at the top for a substantial portion of its length." col. 7, ll. 24–25. Therefore, the district court erred in limiting its consideration to that single reference. This court vacates the district court's judgment of no anticipation and remands for a determination of whether any prior art reference anticipates the '350 patent in view of that patent's correctly construed claims. If the trial court does not find anticipation, the same prior art will be relevant in the obviousness assessment.

The district court held also that the '350 patent was not obvious. The district court only briefly addressed obviousness:

The scope and content of the prior art is the crux of this case. The evidence presented does not establish whether completely open drain channels were part of the existing art when the patent was granted.[2] The patent has a presumption of validity which still stands. *Beckson Marine,* No. C98–5531 FDB, slip op. at 6 (W.D.Wash. March 6, 2001) (citations omitted and footnote added). As noted, the district court will have the opportunity to reassess obviousness in light of a complete claim construction. In addition to the meaning of "sloping drain groove" already explicated by this court with the assistance of the trial court's record, the claim language does not require a completely open drain channel but, rather, a sloping "drain groove being open at the top for a substantial portion of its length." col. 7, ll. 24–25. As noted above, obviousness does not require the prior art to reach expressly each limitation exactly. Rather, obviousness may render a claimed invention invalid where the record contains a suggestion or motivation to modify the prior art teaching to obtain the claimed invention. *B.F. Goodrich Co. v. Aircraft Braking Sys. Corp.,* 72 F.3d 1577, 1582, 37 USPQ2d 1314, 1318 (Fed.Cir.1996); *Hartness Int'l, Inc. v. Simplimatic Eng'g Co.,* 819 F.2d 1100, 1108, 2 USPQ2d 1826, 1832 (Fed.Cir.1987) ("[T]he inquiry is not whether each element existed in the prior art, but whether the prior art made obvious the invention as a whole ...."); *In re Durden,* 763 F.2d 1406, 1410, 226 USPQ 359, 367 (Fed.Cir.1985).

This court has explained the purpose of the motivation to combine requirement:

To prevent the use of hindsight based on the invention to defeat patentability of the invention, this court requires the [challenger] to show a motivation to combine the references that create the case of obviousness. In other words,

---

**2.** This court notes that the proper critical date is the time one year prior to patent filing, not the time of the patent grant as indicated here by the district court.

the [challenger] must show reasons that the skilled artisan, confronted with the same problems as the inventor and with no knowledge of the claimed invention, would select the elements from the cited prior art references for combination in the manner claimed.

This court has identified three possible sources for a motivation to combine references: the nature of the problem to be solved, the teachings of the prior art, and the knowledge of persons of ordinary skill in the art. *In re Rouffet,* 149 F.3d 1350, 1357 (Fed. Cir.1998). "This suggestion or motivation need not be expressly stated," *B.F. Goodrich,* 72 F.3d at 1582, but may be shown by reference to the prior art itself, to the nature of the problem solved by the claimed invention, or to the knowledge of one of ordinary skill in the art. With a complete claim construction, the district court will have the opportunity to reassess obviousness.

In sum, this court vacates the district court's determination that the '350 patent is not invalid and remands for further proceedings.

### IV.

In its counterclaim before the district court, NFM moved for summary judgment that Beckson violated the Lanham Act, Sherman Act, or Washington State Consumer Protection Act. NFM alleged that Beckson knew or should have known that the '350 patent was invalid when it asserted that patent. After granting summary judgment that the '350 patent was not invalid, the district court dismissed as moot NFM's anticompetition counterclaims. Because this court vacates and remands on invalidity, this court also remands NFM's anticompetition counterclaims.

In its reply brief, Beckson challenges for the first time the decision of the district court not to declare the case exceptional under 35 U.S.C. § 285 (1994), and not to award costs to either party. *Beckson Marine,* No. C98–5531 FDB (W.D.Wash. May 8, 2001). Because Beckson did not appeal these issues in its principal brief as required by this court's Rule 28(c), this court will not now consider them. On the record at this stage of the proceedings, this court affirms the trial court's ruling under 35 U.S.C. § 285.

### CONCLUSION

Because the district court improperly granted summary judgment that NFM did not infringe the '350 patent, that the '350 patent was not invalid, and that Beckson did not violate the Lanham Act, Sherman Act, or Washington State Consumer Protection Act, this court vacates and remands.

### COSTS

Each party shall bear its own costs.

*VACATED and REMANDED.*