NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2007-1292,-1293,-1294,-1295

LSI INDUSTRIES, INC.,

Plaintiff-Appellee,

v.

IMAGEPOINT, INC. (formerly known as Plasti-Line, Inc.),

Defendant-Appellant,

and

MARKETING DISPLAYS, INC.,

Defendant-Appellant.

-------------------------------------------------------------

IMAGEPOINT, INC.,

Plaintiff-Appellant,

v.

KEYSER INDUSTRIES, INC. (also known as Florida Plastics International, Inc.),

Defendant/Third Party Plaintiff-Appellee,

v.

MARKETING DISPLAYS, INC.,

Third-Party Defendant-Appellant.

Mark G. Davis, McDermott Will & Emery LLP, of Washington, DC, argued for plaintiff-appellee and defendant/third party plaintiff-appellee. With him on the brief were Evan A. Parke and Amalie M. Weber. Of counsel on the brief were Peter L. Resnik and Matthew E. Leno, of Boston, Massachusetts.

        Mark S. Graham, Luedeka, Neely & Graham, P.C., of Knoxville, Tennessee, argued for defendant-appellant and plaintiff-appellant ImagePoint, Inc.  With him on the brief were Geoffrey D. Kressi and J. David Gonce.  Of counsel on the brief were L. Clifford Craig, John B. Nalbandian, and Ryan M. Bednarczuk, Taft, Stettinius & Hollister LLP, of Cincinnati, Ohio.

        John A. Artz, Dickinson Wright PLLC, of Bloomfield Hills, Michigan, argued for defendant appellant Marketing Displays, Inc.

Appealed from:  United States District Court for the Eastern District of Kentucky

Senior Judge William O.  Bertelsman

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2007-1292, -1293, -1294, -1295

LSI INDUSTRIES, INC.,

Plaintiff-Appellee,

v.

IMAGEPOINT, INC. (formerly known as Plasti-Line, Inc.),

Defendant-Appellant,

and

MARKETING DISPLAYS, INC.,

Defendant-Appellant.

-------------------------------------------------------

IMAGEPOINT, INC.,

Plaintiff-Appellant,

v.

KEYSER INDUSTRIES, INC. (also known as Florida Plastics International, Inc.),

Defendant/Third Party Plaintiff-Appellee,

v.

MARKETING DISPLAYS, INC.,

Third Party Defendant-Appellant.

Appeals from the United States District Court for the Eastern District of Kentucky in case no. 00-CV-197 and 05-CV-105, Senior Judge William O. Bertelsman.

_____

REVISED OPINION ISSUED: May 22, 2008

_____

Before RADER and LINN, <u>Circuit Judges</u>, and WOLLE, <u>Senior District Judge</u>.<sup>*</sup>

LINN, <u>Circuit Judge</u>.

ImagePoint, Inc. ("ImagePoint") and Marketing Displays, Inc. ("MDI") appeal from a final decision of the United States District Court for the Eastern District of Kentucky (Bertelsman, J.), <u>LSI Indus., Inc. v. ImagePoint, Inc.</u>, No. 00-CV-197 (E.D. Ky. Mar. 21, 2007) ("<u>Summary Judgment Order</u>").  That order granted summary judgment of non-infringement to LSI Industries, Inc. ("LSI") and Keyser Industries, Inc., also known as Florida Plastics International, Inc. ("Florida Plastics"), following the district court's construction of numerous claim terms.  <u>LSI Indus., Inc. v. ImagePoint, Inc.</u>, No. 00-CV-197 (E.D. Ky. Oct. 27, 2006) ("<u>Claim Construction Order</u>").[1]  Because the district court incorrectly construed many of the terms on which the summary judgment of non-infringement was predicated, and because for the correctly construed terms, the record is insufficient for us to determine whether summary judgment of non-infringement was appropriate, we <u>vacate</u> and <u>remand</u>.

_____

<sup>*</sup>     Honorable Charles Robert Wolle, Senior District Judge, United States District Court for the Southern District of Iowa, sitting by designation.

[1]     The second district court action at issue in this appeal, No. 05-CV-105, arose from a separate controversy between ImagePoint and Florida Plastics.  In March 2004, ImagePoint filed suit against Florida Plastics in the Eastern District of Tennessee alleging infringement of MDI's patents.  Florida Plastics counterclaimed and pled in MDI as a Third-Party Defendant.  The case was subsequently transferred to the Eastern District of Kentucky and consolidated with No. 00-CV-197 for pretrial purposes.  The issues appealed in these two cases are identical, and for ease of reference, we refer only to No. 00-CV-197.

A petition for panel rehearing was filed by LSI and Florida Plastics and granted by the panel for the limited purpose of supplementing the court's claim construction of "divider member." The previous opinion of the court, issued on March 19, 2008, is withdrawn and this opinion is substituted in its place. The disposition of the appeal is unchanged.

## I. BACKGROUND

MDI is a provider of a wide assortment of indoor and outdoor products for promotional signage and displays. This case involves "menuboards," which are used in the fast food restaurant industry to depict a restaurant's menu items and prices. MDI is the assignee of numerous patents directed to menuboards, in particular, those that are easily reconfigurable. The patents at issue in this appeal are U.S. Patent No. 5,682,694 ("the '694 patent"), U.S. Patent No. 5,983,543 ("the '543 patent"), U.S. Patent No. 6,125,565 ("the '565 patent"), U.S. Patent No. 6,298,589 ("the '589 patent"), U.S. Patent No. 6,631,576 ("the '576 patent"), and U.S. Patent No. 6,843,011 ("the '011 patent") (collectively, "the menuboard patents" or "the patents-in-suit"). MDI's first patent, the '694 patent, issued in 1997. Its second patent, the '543 patent, issued in 1999 as a continuation-in-part of the '694 patent. All other patents-in-suit issued as continuations of the '543 patent, and consequently, share a common specification with that patent. ImagePoint is MDI's exclusive licensee of the menuboard patents.

LSI and Florida Plastics (collectively, "LSI") are competitors of MDI and ImagePoint (collectively, "MDI"). In October 2000, LSI filed suit against MDI in the Eastern District of Kentucky, seeking a declaratory judgment that its menuboards did not infringe the '694, '543, and '565 patents. LSI moved for summary judgment that the

three patents-in-suit were invalid over U.S. Patent No. 1,841,026 ("Greenstone") and U.S. Patent No. 2,079,230 ("Shively"). In response, MDI filed a petition for reexamination of the patents in light of Greenstone and Shively. The Patent and Trademark Office confirmed the patentability of all claims, generating, in the process, a voluminous prosecution record. Thereafter, the lawsuit, which was stayed pending reexamination, was reopened, and MDI added to the litigation the '589, '576, and '011 patents, which had issued during the pendency of the reexamination.

The district court held a claim construction hearing and subsequently issued the Claim Construction Order. Thereafter, the district court considered and granted LSI's motion for summary judgment of non-infringement, concluding that none of the patents, as construed, was infringed by any of the accused infringing devices. This appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## II. DISCUSSION

### A. Claim Construction

Claim construction is a question of law, see Markman v. Westview Instruments, Inc., 52 F.3d 967, 970-71 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996), subject to plenary review. Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1456 (Fed. Cir. 1998) (en banc).

The parties dispute a number of claim terms of the six patents-in-suit. These terms can be generally classified into the following categories: (1) "retention member"; (2) "divider member"; (3) "opposed retention members"; (4) "display member"; (5) "removably secured"; (6) "channel means," "channel"; (7) "frame member"; (8) "without

disassembly"; (9) "mating male and female connection members"; (10) "display device"; and (11) "display module."

At the claim construction hearing, the district court judge communicated his lack of familiarity with patent law, J.A. at 282 ("I get a patent case about every three years. In the 27 years, I've only had about five of them. And this seems to be the most complex so far."), and repeatedly requested guidance from counsel on both sides on how to construe the claims, id. at 285, 286, 292. The record reveals that counsel made little effort to simplify the case, but instead presented the district court with a firestorm of issues and arguments, fueled by the voluminous reexamination record and an aggressive use of statements in that record to support multiple contentions that subject matter was disavowed. In the end, counsel for LSI was successful in persuading the district court to adopt constructions for each of the disputed terms that, in most instances, inappropriately imported limitations from the specifications and prosecution histories into the claims. The victory was short-lived, however, and warrants our reemphasizing that an attorney has a duty not only to zealously advocate on behalf of his client, but also to aid the court in the fair and efficient administration of justice. Allen Eng'g Corp. v. Bartell Indus., Inc., 299 F.3d 1336, 1356 (Fed. Cir. 2002) ("Counsel must remember that they are not only advocates for their clients; they are also officers of the court and are expected to assist the court in the administration of justice, particularly in difficult cases involving complex issues of law and technology."). The district court also has an obligation, despite any obfuscation or lack of assistance of counsel, to carefully consider, and independently decide, the issues in the case. Following the claim construction hearing, the district court adopted LSI's proposed findings of fact and

conclusions of law verbatim. Compare Claim Construction Order, with J.A. at 2674-2738. While this practice is not prohibited, it is frowned upon because, in situations such as these, it gives the impression that there was insufficient independent evaluation of the parties' arguments and evidence. See Wyler Summit P'ship v. Turner Broad. Sys., Inc., 235 F.3d 1184, 1196 (9th Cir. 2000).

We move now to the construction of the claim terms at issue.

* * *

We have frequently noted that it is inappropriate to import limitations from the specification to limit facially broad claims "unless the patentee has demonstrated a clear intention to limit the claim scope using 'words or expressions of manifest exclusion or restriction.'" Liebel-Flarsheim Co. v. Medrad, Inc., 358 F.3d 898, 906 (Fed. Cir. 2004) (citation omitted). It is similarly inappropriate to read statements or actions during prosecution to disclaim subject matter encompassed by the literal scope of the claims unless "the alleged disavowing actions or statements made during prosecution [are] both clear and unmistakable." Omega Eng'g, Inc. v. Raytek Corp., 334 F.3d 1314, 1325-26 (Fed. Cir. 2003); see also id. at 1325 ("[W]e have thus consistently rejected prosecution statements too vague or ambiguous to qualify as a disavowal of claim scope."). In this case, each of the claim terms at issue was limited, despite facially broad language, based on statements in the specifications or the prosecution histories. We have carefully reviewed the specifications and prosecution histories of the patents-in-suit and conclude that, for the "opposed retention members," "display member," and "removably secured" terms, the district court was correct to limit the claims because the statements at issue clearly and unmistakably disavowed claim scope by distinguishing

prior art references to overcome the examiner's rejections.  See, e.g., J.A. at 1591 (distinguishing claims of the '565 patent from the Greenstone reference on the basis of certain "distinct differences," including "display members having translucent portions").  With regard to the remainder of the terms, however, we conclude that vague and ambiguous statements were inappropriately interpreted to disavow claim scope.

Consequently, we affirm the district court's constructions of "opposed retention members," "display member," and "removably secured."  We reverse the remainder of the district court's constructions, which we address in turn.

<u>"retention member"; "divider member"</u>

The district court construed "retention member" as "an individual projection that removably secures <u>in a recess</u> or groove on a divider member."  Claim Construction Order at 42 (emphasis added).  It construed "divider member" as "a removable member with a recess or groove that <u>snaps onto</u> a retention member."  Id. (emphasis added).  The district court's construction of the divider member "snap[ping] onto" the retention member and the retention member as being "secure[d] in a recess" effectively limited the scope of the claims to "male" retention members and "female" divider members.  The district court's imposition of these limitations was based primarily on statements made during reexamination and figures in the specification showing male retention members and female divider members.  Id. at 49.  The plain language of the claims, however, does not require these limitations, and the presence of similar limitations in dependent claims strongly suggests that the independent claims should not be so limited.  Compare, e.g., '543 patent, claim 9, with id., claim 10.  Moreover, the language in MDI's Patent Owner's Statement, on which the district court relied to find disclaimer,

is nothing more than a general description of the features of several independent and dependent claims. This statement, and the others cited by LSI, are not sufficient to constitute a clear and unambiguous disavowal of non-female divider members or non-male retention members.

MDI did make statements during prosecution of the '694, '543, and '565 patents, however, which unambiguously disavowed divider members without a "snap-fit" connection.[2] For example, during reexamination of the '694 patent, MDI made the following statement in an attempt to overcome the examiner's rejection based on a combination of certain prior art references:

> [A] basic combination of the Greenstone and Clark patents do [sic] not show any of the following features (all of which are included in independent claim 9 unless specifically noted otherwise): . . . 4. Removable horizontal bars [i.e., divider members] which are snap-fit in position in the frame . . . .

J.A. at 845 (second emphasis added); see also J.A. at 1311 (similar statement with respect to '543 patent); J.A. at 1891 (similar statement with respect to '565 patent). These statements to the examiner, which related to all claims in those patents with the divider member term, clearly and unambiguously defined divider members to have a "snap-fit" connection, and therefore disclaimed those that do not. Although these statements were made with respect to the '694, '543, and '565 patents, they also supply the meaning of "divider member" as it appears in the '589, '576, and '011 patents,[3] each

---

[2] In the briefs and at oral argument, the parties focused on the male/female limitation issue, and did not address whether there was a separate requirement that the divider member have a "snap-fit" connection with the frame or retention member (regardless of which one snapped "onto" the other). This is the sole issue LSI raises in its petition for rehearing.

[3] The '011 patent is the only patent-in-suit which expressly contains a "snap-fit" limitation. In its response to LSI's petition, MDI argues that because in some instances

of which was filed as a continuation of the application resulting in the '543 patent. <u>See</u> <u>NTP, Inc. v. Research in Motion, Ltd.</u>, 418 F.3d 1282, 1293 (Fed. Cir. 2005) ("Because NTP's patents all derive from the same parent application and share many common terms, we must interpret the claims consistently across the asserted patents.") (citations omitted); <u>Jonsson v. Stanley Works</u>, 903 F.2d 812, 818 (Fed. Cir. 1990) (when two patents using the same claim term both stem from the same parent application, the prosecution histories of both are relevant to an understanding of the term in both patents).

The district court also construed retention member to be an "individual" projection. In so doing, the district court relied upon vague and ambiguous statements in the prosecution history in concluding that MDI had disavowed coverage of non-individual retention members. Except in claims where the term "individual" expressly appears, <u>e.g.</u>, '694 patent, claim 9, the claimed retention members are not so limited.

Properly construed, "retention member" means "a member which retains a divider member to the frame." "Divider member" means "an elongated member used to divide the open face of a frame module into a plurality of areas for placement of display members or menustrips and which is snap-fit in position."

---

the limitation only appears in dependent claims, the doctrine of claim differentiation prevents it from limiting the "divider member" term standing alone. We disagree. As we recently observed, "the presumption created by the doctrine of claim differentiation is 'not a hard and fast rule and will be overcome by a contrary construction dictated by the written description or prosecution history.'" <u>Regents of Univ. of Cal. v. Dakocytomation Cal., Inc.</u>, 517 F.3d 1364, 1375 (Fed. Cir. 2008) (citation omitted).

2007-1292, -1293, -1294, -1295          9

<u>"channel means"; "channel"</u>

The district court construed the "channel means" terms as means-plus-function claim elements under 35 U.S.C. § 112 ¶ 6. Although use of the word "means" gives rise to a presumption that "channel means" is a means-plus-function element, the presumption falls "if the claim itself recites sufficient structure to perform the claimed function." <u>Envirco Corp. v. Clestra Cleanroom, Inc.</u>, 209 F.3d 1360, 1364 (Fed. Cir. 2000). A "channel" is "a metal beam or strip having a U-shaped section," <u>Webster's Third New International Dictionary</u> 374 (2002); <u>see also</u> J.A. at 2629-30, which is a structural member that performs the function recited in the claim. Thus, the word "channel" itself recites sufficient structure to overcome the presumption. The district court's construction was also based on its determination that judicial estoppel barred MDI from arguing that "channel means" was not a means-plus-function claim element. <u>Claim Construction Order</u> at 47. The district court's application of judicial estoppel was misplaced, however, primarily because MDI never prevailed on any argument that these terms were drafted in means-plus-function format. <u>See</u> <u>New Hampshire v. Maine</u>, 532 U.S. 742, 750-51 (2001) (discussing factors informing judicial estoppel).

The district court construed "first channels" as "channel(s) in a divider member that retain portions of display members and prevent light from escaping between a divider member and vertical frame members." <u>Claim Construction Order</u> at 53. It construed "second channels" as "channel(s) in the top frame member or in the bottom frame member that retain portions of display members and that prevent light from escaping between the display members and the frame." <u>Id.</u> at 52. Thus, the district court's construction requires that both the first channels and the second channels be

able to block light, id. at 51, 53, and that the second channels be in the horizontal frame members (i.e., the top or bottom frame members), id. at 51. Contrary to the district court's determination, nowhere does the specification or prosecution history make statements that rise to the level of disavowing first or second channels that do not block light or second channels located in vertical frame members. Properly construed, "first channels" are "grooves or channels in a divider member that secure portions of the display members" and "second channels" are "grooves or channels in a frame member that secure portions of the display members."

"frame member"

The district court construed "frame member" as a "beam-like structure constituting one of four frame members of the display module outer rectangular frame, where the beam-like structure can be comprised of multiple components only where all components are directly attached to one another." Id. at 54. As the district court correctly recognized, the plain meaning of "frame member" encompasses single- or multi-component beam-like structures, but the plain meaning also requires that if the beam-like structure is composed of multiple components, those components must be attached, or otherwise it would be "frame members." Cf. id. at 53. There is no support in the claims, the specification, or the prosecution history, however, for limiting the invention to four frame members only, and doing so would import limitations from the preferred embodiment. Properly construed, "frame member" means "a beam-like structure that forms part of the rectangular frame of the display module, where the beam-like structure can be comprised of multiple components if the components are directly attached to one another."

## "without disassembly of frame"

The district court construed "without disassembly" to mean the "divider members and display members can be removed from or placed in the module with the perimeter of the outer frame remaining intact." Id. at 55. There is nothing in the specification or the prosecution history that supports limiting the disassembly to "the perimeter of the outer frame remaining intact." Properly construed, the term "without disassembly of the frame" carries its plain and ordinary meaning: "the divider members and display members can be removed from or placed in the frame without taking apart the frame."

## "mating male and female connection members"

The district court construed "mating male and female connection members" as "a set of interlocking ridges and grooves." Id. at 56. There is no support in the specification or prosecution history for limiting the term in this manner. "Mating male and female connection members" means no more than "connecting male and female structural elements."

## "display device"

The district court construed "display device" to mean a "sign box (i.e., menuboard) that contains one or more housings with internal illumination and one or more removable display panels (i.e., display modules)." Id. at 56. The district court's construction was based on its conclusion that "MDI consistently emphasized in the specification and during prosecution that the display device contains an internal illumination source." Id.

Some claims specifically recite "an illuminated display device," while others recite only "a display device." Compare, e.g., '565 patent, claim 1, with id., claim 5. Thus, the

language of the claims counsels against imposing an illumination limitation on the display device term because it would make the limitation superfluous where it explicitly appears. Moreover, the specification and prosecution history do not clearly disavow non-illuminated display devices. Thus, properly construed, "display device" means "a sign box (i.e., a menuboard) which includes at least a housing and is adapted to mount one or more display modules thereto."

"display module"

The district court construed "display module" as a "self-contained subunit with an outer, rectangular frame which can be inserted into, removed from, or relocated to a new position within a display device." <u>Claim Construction Order</u> at 57. MDI repeatedly emphasized during prosecution this functionality of the display module—namely, it being self-contained and able to be inserted into, removed from, etc., the display device. For example, during reexamination of the '543 patent, MDI argued: "'[M]odule' is used in the specification and the claims to refer to a self-contained subunit which can be inserted into, removed from, or relocated to a new position within the overall display device, all without the need to disassemble the display device housing. With this terminology, [the inventor] has exercised his lawful right to act as his own lexicographer." J.A. at 1316. Nowhere, however, does the specification or prosecution history indicate that the display module must have "an outer, rectangular frame." And because that limitation appears elsewhere in the claims, <u>e.g.</u>, '543 patent, claim 9, it should not be engrafted onto the "display module" term itself. "Display module" means "a menu module (i.e., menupanel) that can be inserted into, removed from, or relocated to a new position within a display device."

### B. Summary Judgment of Non-infringement

The district court granted summary judgment of non-infringement to LSI based upon its conclusion that the accused infringing devices did not meet a number of the various claim elements as construed. We vacate the district court's grant of summary judgment. First, with respect to the terms for which we have substituted a new construction, we vacate in order for the district court to reassess infringement based on the proper constructions. See Beckson Marine, Inc. v. NFM, Inc., 292 F.3d 718, 724 (Fed. Cir. 2002) ("[A] change in the claim construction at the appellate level generally necessitates a remand to the district court to resolve the new factual issues raised by the new claim construction, except, of course, in the rare instance that the record on appeal leaves no genuine issues of material fact and entitles the movant to judgment as a matter of law."). Second, with respect to those terms on which the district court granted summary judgment and for which we have affirmed the constructions, we find the record insufficient for us to determine if summary judgment of non-infringement was appropriate.

Summary judgment is properly granted when, after drawing all reasonable inferences in favor of MDI, there is no genuine issue of material fact as to non-infringement. See Rodime PLC v. Seagate Tech., Inc., 174 F.3d 1294, 1301 (Fed. Cir. 1999); Fed. R. Civ. P. 56(c). We are presented here with no meaningful way to review the district court's determinations. For example, with respect to the "removably secured" limitation, the district court found: "Because none of the Accused Products, either literally or by equivalent, permit removal of an H-track [(i.e., divider member)] in a direction perpendicular to the menu panel frame, none of the Accused Products meet

the [limitation] . . . ." <u>Summary Judgment Order</u> at 4. There is no analysis, no citation to record evidence, nor any accompanying explanation as to why, despite MDI's vigorous and record-based arguments to the contrary, the district court concluded there was no genuine issue of material fact as to infringement, either literally or under the doctrine of equivalents. Indeed, while we cannot and do not predetermine the question, the evidence and argument MDI has presented indicate that the district court, on remand, could very well find that genuine issues of fact are present with respect to infringement of this limitation. For example, the record suggests that although the divider members (i.e., the "H-tracks") of the accused products must be slid laterally to some minor extent prior to their perpendicular removal, they may still be removed in a manner that is substantially perpendicular to the frame. J.A. at 2765, 2852. This detail warrants more than the cursory disposition it received. Similar questions remain as to infringement of the "opposed retention members" and "display member" limitations. We do not decide those questions here, as they are properly reserved for the district court to decide in the first instance.

## III. CONCLUSION

For the foregoing reasons, the district court's grant of summary judgment of non-infringement is vacated, and the case is remanded for further proceedings consistent with this opinion.

<u>VACATED and REMANDED</u>

COSTS

Costs are awarded to MDI and ImagePoint.